28 C.C.P.A.(Patents)
**CORR v. OLDETYME DISTILLERS, Inc.**
Patent Appeal No. 4438.

United States Court of Customs and Patent Appeals.
April 14, 1941.

feathers, the words "Three Feathers" associated with a pictorial representation of three feathers, and the words "Three Feathers" associated with a shield design, respectively, all being used on distilled alcoholic beverages such as whiskey and gin, the issue is referred to by both parties and the tribunals below as involving but one mark, "Three Feathers," and we shall hereinafter so refer to it.

When 'the interference was originally set up, Corr was the junior party, having filed two applications, each of which was for the registration of a Three Feathers mark, on May 27, 1935, slightly more than two months subsequent to the earliest filing date of the senior party Oldetyme. Corr filed a motion to dissolve on the ground that at the time of filing his two applications in controversy he was not using his mark in interstate commerce. After the motion of Yochim to be substituted in place of Corr had been granted, the interference was dissolved as to Corr's said applications on the ground that no valid registration could issue on them because of Corr's admission that he had not used, in interstate commerce, the trade-mark sought to be registered. The interference proceeded on the application of Yochim which was filed on July 21, 1936, which was 16 months after the earliest filing date of Oldetyme—March 20, 1935. Since the burden rested on the junior party, Yochim, to prove its right to priority and registration, it proceeded to take testimony, and subsequent thereto Oldetyme also took testimony.

As before stated, the Examiner of Interferences rendered a decision in favor of the junior party, and upon appeal to the commissioner the decision was reversed, and in the instant appeal appellant seeks a reversal of the commissioner's decision.

At one time, each party, by showing transfers or attempted transfers, sought to trace its chain of title to the original owner and user of the mark, H. & H. W. Catherwood of Philadelphia, a firm consisting of Wilson Catherwood and Magnus H. Brown. In this court, Oldetyme does not contend that it has successfully proved a chain of title to the involved mark back to the said H. & H. W. Catherwood firm, but relies entirely upon ownership and use by it and its immediate predecessor, while Yochim attempts to antedate the said date relied upon by Oldetyme by proving a chain of title to the mark running back to a date

Mason, Fenwick & Lawrence, of Washington, D. C., for appellant.

Caesar & Rivise, of Philadelphia, Pa. (A. D. Caesar and Charles W. Rivise, both of Philadelphia, Pa., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The instant appeal is from a decision of the Commissioner of Patents, reversing a decision of the Examiner of Trade-mark Interferences who had held in a trade-mark interference proceeding that the appellee, Oldetyme Distillers, Inc. (hereinafter called Oldetyme), the senior party, was not the owner of the mark involved and not entitled to registration of the same, and that the junior party, John Laoghaire Corr (J. C. Yochim & Co., Inc., assignee substituted) (hereinafter called Corr and Yochim, respectively), was entitled to registration of the involved mark.

Although the interference as now constituted is between a single application of Yochim to register the words "Three Feathers" associated with a pictorial representation of three feathers, and five applications of Oldetyme to register the words "Three Feathers," the word "Feathers," a pictorial representation of three

prior to any established date to which Oldetyme is entitled.

We think, in view of our conclusion and in order that the facts of record relating to the proof of Yochim may be more readily understood, that it will be advantageous to first state the facts upon which Yochim predicates its claim of priority. It will be remembered that Corr originally filed applications for registration of the mark on May 27, 1935, at which time he had not made use of the same in interstate commerce, and the record discloses that he at no time made any use of the mark in interstate commerce. Corr was, however, for seventeen years prior to the date national prohibition went into effect (January 16, 1920) engaged as a salesman for Three Feathers whiskey, being for a portion of that time in the employ of J. C. Campbell, who was the agent of the H. & H. W. Catherwood firm. Said agency handled sales in the city of New Orleans and vicinity. Campbell died in December, 1915, and Corr took charge of the territory, where he remained in such charge until December, 1918, at which time the business of H. & H. W. Catherwood was discontinued, which discontinuance will be more particularly referred to hereinafter. The record does not disclose that Corr, while acting as said agent of the said Catherwood firm, ever claimed or asserted title to the trade-mark used, or ownership of the business with which he was connected.

The record shows that as early as 1900 the said Catherwood firm was a partnership composed of Wilson Catherwood and Magnus H. Brown; that Brown died in 1922 and Catherwood died in 1925. The Corn Exchange National Bank and Trust Company of Philadelphia was the executor of the estate of Wilson Catherwood, and Winifred A. Brown and Francis H. Shields were executors of the estate of Magnus H. Brown. The trade-mark Three Feathers was registered in the Patent Office by said Catherwood firm under certificates of registration Nos. 38,540 and 60,829, dated January 2, 1906, and February 19, 1907, respectively, which certificates expired on January 2, 1926, and February 19, 1927, respectively, and were not renewed.

The record further shows that in November, 1918, more than fourteen months prior to the advent of national prohibition, the Catherwood firm notified Corr, who was the New Orleans representative, as aforesaid, not to accept any orders for Three Feathers whiskey for delivery after December 31, 1918. The said notification also stated that the firm had only sufficient Three Feathers whiskey on hand to last for sixty days after January 1, 1919, in the home territory. After Corr had received the notification in November, 1918, not to accept orders for delivery after December 31, 1918, he sent the Catherwood firm an order for fifty cases of Three Feathers whiskey accompanied by a certified check. The check was returned with the statement that the order could not be filled due to the fact that the supply of Three Feathers whiskey had been exhausted.

About one year prior to the advent of prohibition the Catherwood firm dispensed with the services of its manager, Paul Shuman. It gave him a letter of recommendation in which it was stated that: "Due to our retiring from business we are compelled to dispense with his services."

The Catherwood firm left its premises in Philadelphia soon after January 31, 1919, and in the early part of that month it addressed a circular letter, dated January 1, 1919, to each of its customers informing them that the firm intended to abandon its whiskey business. At that time, fifteen states had ratified the Eighteenth Amendment to the Constitution relating to prohibition. In the said letter of January 1, 1919, appeared the following:

"On and after January 1, 1919, we will discontinue our branch offices, and will have no representatives.

"Owing to the growth of prohibition legislation, and the impossibility of obtaining old whiskeys to keep up the high standard of our famous Three Feather Whiskey Blend, we have decided when our present stock is exhausted to retire from business.

"It is with the utmost regret that we are forced to make this decision, and abandon a business which we have conducted continuously since 1811, a period of 108 years."

When the Catherwood firm left its premises in Philadelphia soon after January 31, 1919, the machinery and equipment, including tanks, were sold as junk or otherwise disposed of than for a continuance of an alcoholic beverage business. When the said circular letter was sent to the trade, the Catherwood firm had but $4,552 worth of whiskey on hand, only a part of which was Three Feathers. Its manager, Shuman, purchased part of the whiskey from the firm which had discontinued its bottling operations in February, 1919, and the

entire stock of whiskey was disposed of by the firm before it moved from the premises. The partnership between Wilson Catherwood and Magnus H. Brown was dissolved prior to January, 1920. The whiskey made by the said Catherwood firm was made in accordance with a formula which has always remained a secret.

Appellant's witness Paul Shuman, manager of the Catherwood firm, testified that the last blend of Three Feathers whiskey was made in the summer of 1918, and that the said Wilson Catherwood and Magnus H. Brown, members of the H. & H. W. Catherwood firm, refused to dispose of the right to bottle Three Feathers whiskey or transfer the trade-mark; that in so refusing they wanted the formula and the "brand name" to die with them. At any rate, they expressed the opinion that they preferred "either to wait until the termination of Prohibition which at that time seemed in the indefinite future, or otherwise to permit the trade name to die with the business, their intention being to prevent its use by anyone other than themselves." That neither of the members of the firm ever again reentered the whiskey business is undisputed.

On January 15, 1935, Corr inquired in a letter to Edgar W. Freeman, vice president and trust officer of the Corn Exchange National Bank and Trust Company of Philadelphia, executor of the estate of Wilson Catherwood, whether appellee Oldetyme had purchased the right of the Catherwood estate in the Three Feathers mark. Freeman, at the time, according to the testimony, knew that Oldetyme was selling whiskey under said mark. About this time, Corr offered to purchase said mark from the Catherwood and Brown estates, and on January 22, 1936, Freeman wrote Corr as follows: "I have your letter of January 15 with further reference to the 'Three Feathers' brand. For the past several months I have been discussing this question with Francis H. Shields, Esq., Executor of the Estates of Magnus H. Brown, and with Mr. Hampton Todd, our counsel in the Catherwood Estate. Mr. Shields has also consulted his counsel. As a result of these various discussions there still seems to be some doubt just what interest in 'Three Feathers' brand the two Estates have to sell. We have agreed, however, to sell whatever right in this brand the two Estates have for $1500 payable $500 down and the balance payable upon execution

and delivery of the transfer papers. It is to be clearly understood, however, that we are selling only whatever right, title and interest in the brand the two Estates have and we cannot guarantee that this will give the purchaser the exclusive right to the use of the brand."

On April 20, 1935, about a month before filing his applications, Corr took a quitclaim conveyance from the said estates of Catherwood and Brown to the alleged title of the said mark. This instrument recited the fact that the partnership between Catherwood and Brown "was dissolved in January, 1920, and the business thereof liquidated." The said instrument made no mention of conveying any business or formula connected with the mark and especially specified that the sale was "without warranty of title or of authority to sell" and "without recourse to the Grantors herein." The consideration paid by Corr was $1,500, and the instrument included the said Three Feathers mark as well as ten other trade-marks.

After Corr received his quitclaim conveyance, executed on April 20, 1935, he did nothing in the way of selling alcoholic beverages under any Three Feathers trademark, but on May 27, 1935, as aforesaid, filed his two applications hereinbefore referred to. Corr was never in the liquor business except as a salesman. His inactivity in connection with the use of the said mark continued, and no further steps were taken until on April 6, 1936, when he by assignment attempted to transfer said mark to Yochim.

The record shows that Yochim made its first shipment of Three Feathers whiskey on July 5, 1936, and filed its trade-mark application as aforesaid on July 21, 1936.

On October 12, 1936, Corr executed another instrument purporting to convey to Yochim his said two applications for registration of the mark and "the goodwill of the business in connection with which said trade-marks are used." These were the applications dissolved out of the interference by reason of Corr's affidavit dated August 22, 1936, stating that he had not used the mark in interstate commerce.

Appellant's record discloses that Three Feathers whiskey was first shipped in interstate commerce by Yochim on July 5, 1936, but it does not disclose that any money was spent in the way of advertising the goods or that any great amount of whiskey was ever sold under the Three

Feathers trade-mark. Yochim in its brief states that Corr offers as an excuse for not having been engaged earlier in advertising and selling Three Feathers whiskey, the difficulty in obtaining Eastern rye whiskey of suitable age and quality for blending and selling under the well-known Three Feathers mark.

As before stated, the appellee, Oldetyme, at one time relied on a chain of title running back to the originators of the mark, but in this court relies only upon the use and ownership of the Three Feathers trade-mark after the repeal of prohibition.

It appears from the record that one Samuel Reiter of New Jersey, claiming to be the successor of H. & H. W. Catherwood, started to bottle and sell whiskey on his own account under the Three Feathers trade-mark to some extent before the advent of prohibition, and that the advent of prohibition made it impossible for him to continue said business; that immediately upon repeal of prohibition, December 5, 1933, said Samuel Reiter began preparations to go back into the whiskey business using the Three Feathers trade-mark which he had used prior to prohibition. He at that time formed a corporation (Gallagher & Burton, Inc., later changed to Patterson & Coane, Inc.). In the spring of 1934 he assigned to Patterson & Coane, Inc., his alleged Three Feathers trade-mark, and the business and good will connected therewith. Later that year, Patterson & Coane, Inc., arranged for Coe Distributors, Inc., to use the said trade-mark, and assigned to it the mark and good will of the whiskey business thereto appertaining, the contract being on a royalty basis and such sales being restricted to certain territory.

Coe Distributors, Inc., contracted with Oldetyme for the latter to bottle Three Feathers whiskey for both parties—Coe Distributors, Inc., and Patterson & Coane, Inc. Oldetyme made the first shipment of Three Feathers whiskey to Coe Distributors, Inc., and Patterson & Coane, Inc., about May 10, 1934, and shipments continued to be made to these parties until November, 1934. On November 23, 1934, Oldetyme and Coe Distributors, Inc., contracted for Oldetyme to take over the contract of Coe Distributors, Inc., with Patterson & Coane, Inc.

Oldetyme and its immediate predecessors had, prior to March 20, 1935—its earliest filing date—built up a valuable business and good will in Three Feathers whiskey throughout the United States, including Corr's home city, New Orleans. In the period from May 10, 1934, to December 31, 1934, appellee and its immediate predecessors had sold 15,725 cases of Three Feathers whiskey. Corr on January 15, 1935, had knowledge of appellee's selling Three Feathers whiskey.

As to Yochim's claim to priority based upon title being acquired by Corr's early relationship as salesman with the Catherwood firm, or by the alleged assignment of the naked trade-mark by the executors of the deceased members of the Catherwood firm, we think it is clear that such claims are untenable. Corr never asserted or exercised any trade-mark right in the mark involved, or showed any basis upon which to predicate ownership therein growing out of his relationship with the Catherwood firm before the firm was dissolved. The Three Feathers trade-mark was definitely abandoned and the business with which it was connected was terminated. There remained no business or mark to which any good will in a trade-mark sense could thereafter attach. The fact that the memory of the good qualities of Three Feathers whiskey would be recalled long after the mark and the Three Feathers business had been abandoned, and thus add to the value of the mark when again used, does not change the situation. The estates of Catherwood and Brown passed no valid title in the involved trade-mark to Corr by the quitclaim conveyance, for the reason that there was no such valid trade-mark in existence. From the record it appears that this fact was well understood by the executors of the respective estates, and the instrument purporting to quitclaim any right they might have in the marks, as far as the issue here is concerned, was a nullity.

Appellant's contention that the good will survived, irrespective of the said abandonment of the business and the marks is without merit. The law is well established that the right to use a trade-mark as against others cannot be acquired by the attempted transfer of the naked mark when disassociated with the business with which it is used. United States Ozone Co. v. United States Ozone Co. of America, 58 F. 2d 1051, 19 C.C.P.A., Patents, 1256; Brewster-Ideal Chocolate Co. v. Dairy Maid Confectionery Co., 62 F.2d 844, 20 C.C.P. A., Patents, 848; Kelly Liquor Company v. National Brokerage Company, Inc., etc.,

924

102 F.2d 857, 26 C.C.P.A., Patents, 1110; Mayer Fertilizer & Junk Company v. Virginia-Carolina Chemical Company, 35 App.D.C. 425; Macmahan Pharmacal Co. v. Denver Chemical Mfg. Co., 8 Cir., 113 F. 468; Kidd v. Johnson, 100 U.S. 617, 25 L.Ed. 769.

We have carefully considered the authorities cited by appellant on this phase of the law, and find them not to be in point.

Yochim cannot rely, as proof of title in it, upon the attempted assignment of the mark to it by Corr. Corr. had nothing to assign. Yochim's earliest interstate use of the Three Feathers mark is definitely shown to be on July 5, 1936. This was long after the appellee and its immediate predecessors had used the mark in interstate commerce and had established a thriving business in the sale of Three Feathers whiskey.

Yochim presents the argument that it has traced its title through the members of the Catherwood firm, which firm was deprived of the use of its mark by the advent of prohibition, and that since that barrier was removed, it and its predecessor Corr did all that was necessary to do to reclaim and reestablish the trade-mark which had not been abandoned. The evidence shows that the Catherwood firm closed its business, abandoned its mark, refused to sell its formula or the good will of the business before prohibition made such action necessary, and that the members of the firm after it was dissolved never attempted to reenter the business and at no time ever evidenced any intention of again making or selling Three Feathers whiskey.

The record definitely discloses that for a number of months after prohibition was repealed, Corr made no effort to exercise his said alleged right of ownership of said mark and made no attempt to acquire, through the executors of the Catherwood and Brown estates, any interest they might have in said trade-mark until after he was advised that the appellee's predecessors were using the said Three Feathers mark in interstate commerce.

As we see it, the principle of law announced in several cases, such as Kelly Liquor Company v. National Brokerage Company, Inc., etc., supra, that non-use during the period of prohibition would not be regarded as evidence of abandonment, is not involved in the instant appeal. Without regard to prohibition, the record before us shows a definite abandonment of the mark.

We think the commissioner, in a very clear decision, arrived at the right conclusion, and properly held that, upon the instant record, the appellee had shown prior ownership and use of the involved mark and a right to registration of the same, and that appellant was not entitled to the registration applied for.

The decision of the Commissioner of Patents is affirmed.

Affirmed.

JACKSON, Associate Judge, concurs in the conclusion.