The **TAPECOAT COMPANY, INC.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 71 C 2795.

United States District Court,
N. D. Illinois, E. D.

Feb. 7, 1973.

M. E. Pearl, of Gottlieb & Schwartz, B. M. Brodsky, S. L. Geifman, Chicago, Ill., for plaintiff.

James R. Thompson, U. S. Atty., for the Northern District of Illinois, Chicago, Ill., for defendant.

MEMORANDUM OPINION

MAROVITZ, District Judge.

I.

*Motions to Dismiss and For Summary Judgment*

This is an action for the refund of Federal income taxes and assessed interest for fiscal years ended May 31, 1965 and May 31, 1966 in the total amount of $46,185.78 plus interest.

The Tapecoat Company, Inc., a Delaware corporation with its principal place of business in Evanston, Illinois, manufactures various products used in covering and insulating pipes, ducts and similar conduits to protect against corrosion, its primary product being a cotton fabric coal tar tape of various widths. Prior to 1962 the trademark "Tapecoat" (Reg. No. 533,965 and "TC" (Reg.No. 672,397) under which the products were manufactured was owned by a partnership called the Tapecoat Company.

On February 28, 1962 the partnership transferred all of its assets except the trademark in question to plaintiff.

During its fiscal year ended May 31, 1962, plaintiff entered into a license

---

6. The two complaints did include facts occurring after the prior pleadings.

agreement with the owners of a trademark which required plaintiff to make annual payments of $50,000 to a partnership, the Tapecoat Company. During the fiscal years 1965 and 1966, the tax years in issue, plaintiff paid the following amounts pursuant to the license agreement:

| Fiscal year Ended | Amount Paid |
| --- | --- |
| May 31, 1965 | $50,000.00 |
| May 31, 1966 | 20,833.33 |

On October 25, 1965, plaintiff entered into an agreement for the purchase of the trademark for the sum of $650,000. The contract provided for an initial cash payment of 29% of the purchase price with the balance payable in five equal annual installments, bearing interest at the rate of 5% per annum, payable annually on the outstanding balance. During the fiscal year ending May 31, 1966, plaintiff accrued interest in the amount of $9,614.55 in connection with the aforesaid purchase agreement.

Plaintiff timely filed federal corporate income tax returns for the fiscal years ended May 31, 1965 and May 31, 1966, with the District Director of Internal Revenue at Chicago, Illinois and timely paid the income taxes shown thereon to be due. The Commissioner of Internal Revenue assessed and collected from plaintiff deficiencies in income tax for the fiscal years ended May 31, 1965 and May 31, 1966, in the amounts of $24,586.-36 plus $4,965.77 interest and $14,614.98 plus $2,018.67 interest respectively which plaintiff paid. On September 19, 1969 plaintiff filed for a refund of that amount. On October 14, 1971 plaintiff was notified by the District Director that its claims for the fiscal years 1965 and 1966 were disallowed in full.

Plaintiff subsequently brought this suit to recover $46,185.78 plus interest on the grounds that the Commissioner of Internal Revenue erroneously determined that the aforementioned $50,000 and $20,833.33 paid as license fees for the trademark in 1965 and 1966 and the $9,614.55 interest incurred in 1966 as a result of the trademark purchase, were not deductible.

After conference a pretrial order was filed by the parties stipulating to certain facts and outlining the contested issues of fact and law.

The Government filed a Motion For Summary Judgment and a Motion For Partial Dismissal and we are now prepared to rule on those motions.

II.

*Motion For Summary Judgment*

Whether or not plaintiff's deductions for 1965 and 1966 were proper deductions revolves around the validity of the transactions between the Tapecoat partnership and plaintiff regarding the original transfer of assets and the subsequent sale of the trademark.

The Government in its Motion For Summary Judgment states that on February 28, 1962 when the Tapecoat partnership transferred all of its assets it also transferred the trademark and that the amounts deducted as "license" fees were properly disallowed given the fact that the partnership retained nothing to license. This contention applies as well to the 1966 interest deduction since a finding that the subsequent sale was invalid and any interest deducted thereon was therefore improper.

The basic premise relied on by the Government is the proposition that good will and a trademark cannot be separated and consequently if goodwill has been transferred by a company it is factually indisputable that the trademark involved must also have been transferred. In support of this proposition the Government cites Coca-Cola Bottling Co. v. Coca-Cola, 269 F. 796 (D.Del.1920); Corr v. Oldetyme Distillers, 118 F.2d 919, 28 C.C.P.A. 1057 (1941); Holly Hill Citrus Grower's Ass'n. v. Holly Hill Fruit, 75 F.2d 13 (5th Cir. 1935) and Grace Bros.

v. Commissioner, 173 F.2d 170 (9th Cir. 1949) and in addition places great emphasis on Vandenburgh, Trademark Law & Procedure, (2d ed., 1968) p. 259 which states:

"There are no rights in gross in trademarks. Marks cannot exist apart from the good will of the business with which they are associated. If the mark and the good will of the business which it represents are separated, the rights in the mark are destroyed."

It then seeks to apply this rule to our case by attempting to establish by way of depositions and various documents such as the 1962 Bill of Sale (Plaintiff's Exhibit No. 7) that goodwill was transferred at the time of the transfer of the assets from the partnership to the corporation. Based upon this, defendant would have us hold that nothing was retained by the Tapecoat partnership in 1962 and consequently nothing could have been licensed or sold after 1962, a conclusion that would uphold the Internal Revenue's disallowance of plaintiff's deductions.

Plaintiff on the other hand argues that whether goodwill or the trademarks were transferred is a question of fact that cannot be determined from the documents alone but rather must be based upon what the parties have actually done under the agreements, a determination that cannot be made by way of summary judgment given the lack of sufficient facts. Plaintiff primarily contends that it fits within Sections 10, 5 and 45 of the Lanham Act (15 U.S.C. §§ 1060, 1055 and 1127) in that it controlled the nature and the quality of the goods in connection with which the mark was used and that plaintiff was therefore a "related company" to whom the mark could be licensed.

We have carefully considered the pleadings, memoranda, depositions and documents submitted and based thereon deny the motion for summary judgment. The only conclusion that can be derived from the entire file in this case is that a factual question yet exists as to what transpired between 1962 and 1966 and as to what interpretation ought to be given to the documents and transactions involved. At best we have a factual conflict between what the 1962 Bill of Sale purported to transfer and the subsequent acts of the parties which belies the transfer of the trademark. Indeed, although the 1962 Bill of Sale refers to the transfer of goodwill, the 1965 Assignment (Plaintiff's Exhibit 4) also refers to the transfer of "the goodwill of the business connected with the use of the trademarks," indicating the retention of the trademarks and associated goodwill prior to 1965.

This conflict cannot in any way be resolved by the application of the general proposition that a trademark cannot exist apart from the goodwill of the business with which it is associated to naked documents without further inquiry into the circumstances surrounding both the entry into the agreements and the performance thereof. It is quite possible that a situation can be proven by plaintiff in support of its position that the partnership properly licensed the trademarks after 1962 and properly sold them in 1965. Indeed there are numerous instances where goodwill is separable from the trademark and could be transferred apart from the business to which it relates. See Callman, The Law Of Unfair Competition, Trademarks and Monopolies, Vol. 3 § 78.1. Whatever those circumstances are, if indeed they exist, and whether they fall within or without the rule of goodwill-trademark inseparability remains above all a question of fact. It is interesting to note that the authority most relied on by the Government, Edward C. Vandensurgh III, has submitted an affidavit on behalf of plaintiff stating that the passage quoted by the Government from his treatise to the effect that "Goodwill and a trademark cannot be separated" was quoted out of context and that "whether or not

good will and the trademark are separated in any particular instance, is a fact question to be determined from all the facts involved and not from a particular assignment document" (Vandensurgh Affidavit p. 3). Mr. Vandensurgh further stated that after having examined all of the documents and pleadings in this case that it would "be improper in the present instance to . . . conclude merely from the language of the assignment document alone (i. e. the Bill of Sale dated February 28, 1962) that "THE TRADEMARK WAS TRANSFERRED TO THE PLAINTIFF IN 1962" without reference to all of the surrounding facts pertinent to the transaction. (Aff. p. 3–4)

While the Vandensurgh affidavit is merely advisory and certainly not dispositive it buttresses our independent finding that the issue cannot be resolved on summary judgment given the factual questions yet unresolved.

The Motion For Summary Judgment is therefore denied.

### III.

*Motion For Partial Summary Judgment*

The Government has also filed a motion seeking to have the portion of plaintiff's suit relating to the $9,614.55 interest deduction for 1966 dismissed for lack of jurisdiction on the grounds that plaintiff did not raise the issue of the interest deduction in its claim for refund as required by 26 C.F.R. § 301.6402–2.

We have determined that a timely claim was indeed filed in that the protest filed with the District Director of the Internal Revenue specifically raised the issue of the interest expense for 1966 and the issue was discussed at an appellate conference with the Internal Revenue Service after which the claim was disallowed. At no time prior to this motion was the question of formal deficiency raised by the Government and the Internal Revenue Service was fully apprised of the fact that the 1966 in-

terest deduction was in contention and cannot now claim surprise. In view of the foregoing the Motion For Partial Dismissal is denied.

It is ordered, that the Motions For Summary Judgment and For Partial Dismissal are denied.