59 CCPA

**AMERICAN LAVA CORPORATION,**
Appellant,

v.

**MULTRONICS, INC., Appellee.**

**Patent Appeal No. 8652.**

United States Court of Customs
and Patent Appeals.

June 8, 1972.

Charles H. Lauder, St. Paul, Minn.,
attorney of record, for appellant.

Rupert J. Brady, Washington, D. C.,
attorney of record, for appellee.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board, 161 USPQ 164, adhered to on reconsideration, granting appellee's petition to cancel appellant's registration [1] of MULTI-CAP as a trademark for capacitors. Appellee's petition for cancellation asserts that it is the owner of the unregistered trademarks MULTICAP and MULTI-CAP for multi-tap capacitors, that it adopted and used these marks "long prior" to the date of first use claimed in appellant's registration,[2] that it had "continuously used" both trademarks since the date it adopted them, and that the concurrent use of appellant's trademark and appellee's trademarks is likely to result in confusion, mistake, or deception. We affirm.

Appellant has used its mark on multi-*layer*, miniaturized, block-type ceramic capacitors, whereas appellee has used the mark on multi-*tap* capacitors of various internal configurations but all of relatively gigantic size. One capacitor unit sells for $7,455. To say that the goods of the parties "are the same," as appellee asserted, is somewhat like that saying toothpicks and telephone poles are the same because they are both pieces of wood. Nevertheless, we agree with the board that, because

> The description of goods *as set forth in the registration under attack* [namely, "CAPACITORS"] comprehends the goods of petitioner * * *, the goods of the parties must be considered substantially the same. [Emphasis ours.]

Furthermore, (1) appellant's mark is identical to one of appellee's marks, and

appellant's mark and appellee's other mark are practically indistinguishable, and (2) appellant concedes priority in appellee.

Appellant's argument is essentially this: since petitioner in a cancellation action must prove that it is *actually using* any trademarks on which it relies *at the time it files the petition* for cancellation and since appellee concedes that it had not "used" (in the trademark sense) the marks on which it relies for over two years at the time it filed the petition in this case, the board erred in granting the petition. Appellant relies principally on Old Monk Olive Oil Co. v. Southwestern Coca-Cola Bottling Co., 28 C.C.P.A. 1091, 118 F.2d 1015 (1941). There being no dispute about the facts, we are presented with a question of law.

Appellee submits on the record which contains, however, its memorandum in opposition to appellant's request for reconsideration before the board, in which appellant made the same argument, based on the same principal authority, it is making here. In its memorandum appellee relied principally upon the opinion of Assistant Commissioner Leeds in Grove Laboratories, Inc. v. Wolf, 115 USPQ 416 (1957), which stated that the *Old Monk* case "proceeded under the 1905 Act which contained no specific provision concerning excusable nonuse, and the language of the decision is not controlling in a proceeding under the 1946 Act." According to Assistant Commissioner Leeds,

> Ordinarily, a petitioner for cancelation must show that he is using the mark at the time his petition is filed if the petition, as here, alleges abandonment. This, however, is not and cannot be an inflexible rule of law, although some of the language of the Commissioner in the Arrow case [Ar-

1. Principal Register, No. 814,367, registered Sept. 6, 1966, on application filed Sept. 16, 1965, claiming first use Sept. 3, 1965.

2. The specific allegations and the proof are that appellee adopted its marks less than

eleven months before appellant adopted its mark, but appellant does not contest priority. Appellee alleges that it applied April 8, 1966, Ser. No. 243,700, to register MULTICAP for capacitors, and that the registration herein sought to be cancelled was cited as a reference against it.

row Importing Co. v. Driesen, 74 USPQ 66 (1947), opinion by First Assistant Commissioner Frazer applying the *Old Monk* doctrine] * * * might mislead the reader into the belief that it is.

The board, however, did not rely on the *Grove* opinion. Because its opinion on reconsideration is not reported, we reproduce the relevant portions therefrom:

It is a fundamental concept in the law of trademarks that prior use of a mark, unless abandoned, will vitiate any claim to an exclusive right to the use of that mark by a later user. See: Columbia Mill Co. v. Alcorn, 150 U.S. 460, 14 S.Ct. 151 [37 L.Ed. 1144] (1893); Field Enterprises Educational Corporation v. Core Industries, Incorporated, 161 USPQ 243 (DC NY, 1969). That is to say, non-use, without abandonment, does not mean that the right to use has been destroyed as a matter of law. In the particular case, albeit petitioner had not used "MULTICAP" as a mark for its goods for a period in excess of two years, the evidence indicated no intent to abandon the said mark. As indicated by Justice Holmes in Beech-Nut Packing Co. v. P. Lorillard, 273 U.S. 629, 47 S.Ct. 481 [71 L.Ed. 810] (1926) this non-use without abandonment "does not end at once the preferential right of the proprietor to try it again upon goods of the same class with improvements that renew the proprietor's hopes".

In the Old Monk case there was no evidence submitted concerning "intent". In that case, the party relied upon evidence previously taken in a prior suit between the parties, evidence relating to matters five years prior to the institution of the second suit. That case is clearly distinguishable because we do have evidence which clearly shows no intent to abandon.

Since petitioner's prior right to use "MULTICAP" was not lost at the time petitioner filed its petition for cancelation, and since respondent's registration is inimical to petitioner's right to use "MULTICAP" for capacitors, petitioner is necessarily damaged by respondent's registration.

## OPINION

### I. *The Use-at-the-Time-of-Petition Doctrine*

*Old Monk* was, as Assistant Commissioner Leeds pointed out, a case decided under the 1905 Act. The Old Monk Olive Oil Company had sought cancellation of the appellee's registration of "Old Monk" for various soft drinks on the ground that it was "invalid under the confusion in trade clause of section 5 of said trademark act." It offered no fresh evidence, relying instead on testimony and exhibits introduced five years earlier in an opposition proceeding between the same parties and on an official copy of an application of its own then pending in the Patent Office. However, this court refused to consider the application for reasons which are not relevant here. The remaining evidence it found insufficient to establish that appellant had been injured by appellee's registration, answering in the affirmative the question "whether, in order for appellant to succeed, it was incumbent upon it to establish use of its trade-mark upon * * * [its goods] on or about the filing date of its petition." Since such proof was clearly lacking, this court affirmed the decision of the Commissioner refusing cancellation. Finally, in a paragraph upon which appellant has placed great emphasis, this court stated:

In conclusion we would observe that no question of abandonment by appellant of its mark is here involved, but only the question of its use on or about the time of the filing of its petition for cancellation. *If it was not using its mark at that time, it was not injured by the existence of appellee's registration.* [Emphasis ours.]

In evaluating the present strength of the holding in the *Old Monk* case, it

should first be noted that none of the three cases on which the opinion, relies supports the proposition that there is a use-at-the-time-of-filing requirement independent of the non-abandonment requirement. The statement in Model Brassiere Co. v. Bromley-Shepard Co., 18 C.C.P.A. 1294, 1298, 49 F.2d 482, 485 (1931), that "In * * * [a petition for cancellation] it is clear that * * * [the petitioner] should show such facts as would show his ownership and use [of a trademark] at the time the petition was filed" was, as this court acknowledged in the *Old Monk* opinion, "to a great extent obiter dictum." No authority at all was cited for the proposition in the *Model Brassiere* case. In Skene v. Marinello Co., 50 U.S.App.D.C. 265, 270 F. 701 (1921), our predecessor in jurisdiction over trademark appeals clearly felt that appellant's failure to prove continued use of the mark in the particular circumstances of that case raised an inference of abandonment and that appellant had not overcome that inference. In American Cyanamid Co. v. Synthetic Nitrogen Products Corp., 19 C.C.P.A. 1235, 58 F.2d 834 (1932), this court held that proof that the petitioner was using its mark in interstate commerce on or about the filing date of its petition was *sufficient* to establish that it had been "damaged" by the registration which it sought to cancel. The *Old Monk* case itself seems to have been the first in which the *sufficient* condition was transformed into a *necessary* condition, independent of the proposition that one who has *abandoned* a mark cannot prevent its subsequent adoption and registration by another, and appellant has not cited any opinion by this or any other court following *Old Monk* or applying a similar rule.

Second, as Assistant Commissioner Leeds pointed out, *Old Monk* was decided under the Trademark Act of 1905, and the Trademark Act of 1946 evidences a more lenient attitude toward nonuse than the 1905 Act. See 15 U.S.C. § 1059(a) recognizing the principle of excusable nonuse in connection with reg-

istration renewals. Proof that a mark has not been used for two or more consecutive years makes out a prima facie case that it has been abandoned, 15 U.S. C. § 1127, definition of "Abandonment of mark," but the inference of abandonment is readily rebutted by a showing similar to that permitted under 15 U.S. C. § 1059(a). See, e. g., Sterling Brewers, Inc. v. Schenley Industries, Inc., 58 C.C.P.A. 1172, 441 F.2d 675, 169 USPQ 590 (1971), the COOK'S GOLDBLUME case.

Finally, the present statute, whatever may have been the case with the Trademark Act of 1905, clearly does not contemplate the result dictated by the *Old Monk* opinion. According to 15 U.S.C. § 1052, "Trade-marks registrable on principal register,"

> No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
>
> * * * * * *
>
> (d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another *and not abandoned*, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive * * *. [Emphasis ours.]

The statute says nothing about nonuse at this point. If the mark has not been abandoned by the first user, it will preclude registration if the other conditions are met. The rule for which appellant contends, on the other hand, would allow the second user of a mark to register it during a period of excusable nonuse by the first user, but register it subject to an implicit condition subsequent allowing the first user to cancel the second user's registration upon restablishing its own use of the mark at any time prior to the second user's registration having become incontestable.

■ For the foregoing reasons, we will no longer follow *Old Monk* insofar as it holds that a petitioner in a cancellation proceeding must show use of the mark on which it relies at the time of its petition, in addition to the statutory requirement that the mark on which the opposer relies has not been abandoned at that time. Accordingly, priority in appellee being conceded, this case presents only two questions: First, did appellee establish trademark rights in the marks MULTICAP and MULTI–CAP and second, if it did, did it thereafter abandon such rights?

## II. *Did Appellee Establish Trademark Rights in its Marks?*

■ Appellee is a manufacturer of, inter alia, antenna systems for the shore ends of long distance, low- to medium-frequency, ship-to-shore cor .munication facilities. It used the marks MULTI-CAP and MULTI–CAP in two installations prior to appellant's first use of its mark. In the first, which was a wholly intrastate operation,[3] operating difficulties were encountered, and one or the other of the marks was used on approximately six variations of the capacitor units used with the antenna. However, only one such unit was finally turned over to the United States Navy when it accepted the antenna system. The second installation, also for the United States Navy, was in Guam. For that installation, appellee sold the government a total of four "MULTICAP" capacitor units at a total price of $29,820. The mark was used on the units themselves, on the boxes in which they were shipped, in the manuals which were provided to instruct the Navy communications personnel in the operation of the newly upgraded antenna system, and in various documents relating to that installation. We think that there can be no question but that, had appellee sought registration of its marks immediately after this activity, it would have been accepted as sufficient to support the registrations. See Community of Roquefort v. Santo, 58 C.C.P.A. 1303, 1307–08, 443 F.2d 1196, 1199–1200, 170 USPQ 205, 208 (1971).

## III. *Did Appellee Abandon its Marks?*

■ Appellee concededly sold no MULTICAP or MULTI–CAP capacitor units between June 1965, when it completed work on the installation in Guam, and February 1968, when testimony on its behalf was taken. This was a period of over two years, and 15 U.S.C. § 1127 provides that "Nonuse for two consecutive years shall be prima facie abandonment." Thus, it was plainly incumbent upon appellee to rebut the inference of abandonment arising from its failure to use the marks[4] during that period.

Appellee's president testified that "the customers [for the NORD antenna system, in which it used the MULTICAP capacitor units] are the United States Government, foreign governments, and at the present a limited commercial use." He further testified that appellee was then "trying to market the NORD antenna system to ship-to-shore operators in the United States, particularly to the oil companies who have transports, and companies of this type," but that the market for the NORD system was limited "because of the fact the antenna is primarily used with LF, which is low frequency, and these frequencies are predominantly controlled by the United

---

3. Appellee is a corporation of the State of Maryland having its office in Rockville, Md., and the first installation was at Annapolis, Md.

4. 15 U.S.C. § 1127 also provides that
   For the purposes of this Act a mark shall be deemed to be used in commerce
   (a) on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto and the goods are sold or transported in commerce * * *.
   Thus appellee's use of the marks in communications with prospective purchasers, while evidence of non-abandonment, is not itself trademark use of the marks.

States military." As stated previously, both installations in which capacitor units bearing the trademark MULTICAP were used were United States Navy facilities.

Basically, appellee's case is that its customers had come to recognize the MULTICAP trademark, that it had maintained the capability of producing further capacitor units of the types it previously called MULTICAPS (including storing of labels bearing that trademark), and that it had been actively, though unsuccessfully, attempting to sell further units of those types. Appellee's president testified that, at the time his testimony was taken, appellee had "proposals [for the sale of antenna systems incorporating MULTICAP capacitor units] that have been out for the last six to eight months with several commercial customers, as well as the Government," and that appellee had "excellent prospects" for additional sales of MULTICAP capacitor units in the then "near future." He explained that

> We have been in rather extended litigation with the United States Navy for the last eighteen months over the NORD Antenna System contract, and all of our business seems to have stopped until the litigation was settled. That litigation was settled last month and we now anticipate a fairly large quantity of antenna system orders where Multicaps will be used.

He then detailed considerable promotional and sales negotiating activity in the immediate past. Similarly, appellee's former vice-president testified that he had "engaged in talks" with Navy personnel concerning the upgrading of two other antenna systems on Guam, which upgrading would have employed MULTICAP capacitor units, that the commanding officer of another Navy communications installation where appellee later installed an antenna system *not* employing MULTICAP capacitor units remonstrated with him for not having used the MULTICAP capacitor units, referring to them by name, and that he later discussed changing the latter system over to the use of MULTICAP capacitor units with personnel at U. S. Naval Headquarters in Washington, D. C.

Concededly, all this talk had not led to further sales by the time appellee took testimony. However, appellee's former vice-president had an explanation for that which we find very reasonable:

> At the present time the Vietnam war, that is where all the money is going. The Government has held up as much as possible spending on improving antenna systems.

This same witness testified convincingly that his work placed him in a position to know if any Government contracts for antenna systems of the type in which MULTICAP capacitor units might be employed had been let and that, to his knowledge, no such contracts had been let.

Appellant's strongest point is, perhaps, that appellee installed a NORD antenna system for the United States Navy between the time of the Guam work and the taking of testimony in this case, the capacitor units in which it did *not* designate as MULTICAPS. As 15 U.S.C. § 1127 says, abandonment of a mark "may be inferred from circumstances." However, appellee's former vice-president testified that the Navy wanted "immediate shipment" for that job, that it would have taken them "Thirty to sixty days, depending upon the components being available," to make up capacitor units of the type which they had previously designated MULTICAP, and that "the only reason the Multicaps were not included in the unit was as an expedient in order to get the unit delivered and in operation at the time they wanted it * * *." Furthermore, there is testimony that, while the MULTICAP units used in the Guam installation were a resounding success, the capacitor units used on the later, hurried job were unsatisfactory. Thus, it is quite understandable that appellee would not have wanted to use the same marks on both units. On the whole, and taking into consideration the

previously set forth evidence of intent to resume use, we are persuaded to accept appellee's explanation as excuse for this nonuse of the marks.

■ Appellant makes many redundant arguments in its brief, some of which are not relevant to the question before us, which is whether its *registration* should be cancelled because its continuance on the register is inimical to appellee's rights, in particular the argument that under Hanover Star Milling Co. v. Metcalfe, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916), and United Drug Co. v. Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918), it could not be stopped *from using* its trademark by appellee under the circumstances of this case. That may well be true, but it is not determinative of the issue in this cancellation proceeding. It is also irrelevant that its capacitors are only 0.250″ long, 0.050″ wide and 0.050″ or less thick while one set of appellee's capacitor units fills a large crate and sells for thousands of dollars, so long as its registration describes the goods broadly as "capacitors," which is as descriptive of appellee's goods as it is of appellant's. A cancellation proceeding is not a suit for unfair competition, and it should not be argued as though it were. The issues are much narrower.

For the foregoing reasons, we find that appellee did not abandon its trademark MULTICAP and MULTI–CAP prior to the taking of testimony in February 1968. Accordingly, the decision of the board is affirmed.

Affirmed.

LANE, Judge (concurring).

I concur in the result reached by Judge Rich in this case. It may appear at first blush that affirming the decision of the TTAB sustaining the petition for cancellation of appellant's registration is a harsh judgment considering the nonuse by the appellee at the time of the filing of the petition. Deeper analysis demonstrates that this is not so. My approach to this case is different from both Judge Almond's and Judge Rich's. While each of them focuses on the via-

bility of the rule extracted from the *Old Monk* case, I am of the view that the particular facts of the present case are so different from *Old Monk* that it is neither necessary nor desirable to decide now whether to bury the rule or resurrect its spirit in the form of a new, but not dissimilar, rule.

The chronology of events which led to this appeal, as I gather it from the record, is as follows:

| | |
|---|---|
| October 15, 1964 | — alleged date of adoption of marks by appellee; |
| June, 1965 | — use of marks in interstate commerce by appellee (Guam installations); |
| September 3, 1965 | — alleged date of first use in commerce by appellant; |
| September 16, 1965 | — filing date of appellant's application which matured into the registration herein sought to be canceled; |
| April 8, 1966 | — alleged filing date of application Serial No. 243,700 for the registration of the mark MULTICAP for multi-tap electrical capacitors to appellee; |
| September 6, 1966 | — date of appellant's registration involved herein; |
| September 18, 1967 | — filing date of the appellee's petition for cancellation by which this litigation was initiated. |

Prior to the issuance of appellant's registration, but after the filing date of appellee's application, the Patent Office had before it copending applications for registration of virtually the identical mark on goods of broad overlapping description. It seems surprising that no trademark interference was declared in view of § 16 of the Lanham Act, 15 U.S.C. § 1066, which provides:

Whenever application is made for the registration of a mark which so resembles a mark * * * for the registration of which another has previously made application, as to be likely when applied to the goods or when used in connection with the services of the applicant to cause confusion or mistake or to deceive, the Commissioner may declare that an interference exists.

I appreciate that the language of the statute is permissive rather than mandatory. Nevertheless, I am aware of the fact that interferences between trademark applications have in the past been declared under similar circumstances. An appeal from a decision of the TTAB in such a proceeding was recently decided by this court. See Jim Dandy Company v. Martha White Foods, Inc., 458 F.2d 1397, decided May 11, 1972. While I also recognize that recent Patent Office rule changes, to which I alluded in my concurring opinion in *Jim Dandy*, reflect a current Patent Office policy of avoiding trademark interferences, these rule changes were not in effect at the time the applications of the parties here involved were copending. The declaration of the interference in the *Jim Dandy* case was dated November 9, 1967, more than a year after the issuance of the present appellant's registration.

The fact remains that an interference was not declared in the present case, and this court may neither do so nor direct that such be done. However, my resolution of the controversy before us is aided by a consideration of what would have been the result had an interference been declared. Appellee, having the later filing date, would have been in the position of the junior party, and conversely, appellant would have been put in the position of senior party by virtue of its earlier filing date. The burden would have been on the junior party, appellee, to prove priority of use. Appellee would have proved its use of the marks in connection with the Guam installations in June of 1965, a date which is earlier than that alleged by appellant to be its date of first use, September 3, 1965. Given that showing, appellee would have prevailed in this hypothetical trademark interference unless appellant would have alleged and proved an abandonment of the mark by appellee in the interim between the date of the Guam use and the filing of appellee's trademark application.

In short, it seems to me that had the litigants been involved in interference, the issue would have been reduced to the question of abandonment by appellee just as it does under the approach taken by Judge Rich. I agree with the board and Judge Rich that the record here does not support a holding of abandonment. I do not understand that Judge Almond is of the view that appellee has in fact abandoned its rights in the marks here involved. Whether the time period for measure of appellee's nonuse be considered as the period June 1965 to the 1966 filing date of its application (less than a year) or June 1965 to the September 1967 date of its petition for cancellation (more than two years thereby raising a prima facie inference of abandonment), I am satisfied that the testimony adduced by appellee in this case proves it has never harbored any intent to abandon and has acted with the intent *not* to abandon. I am in full agreement with Judge Rich's assessment of the record in this regard.

If the test for standing would be in this case as Judge Almond defines it, and appellee's standing to maintain this cancellation proceeding is in truth the ultimate question before us, it would lead to the result that appellee would have prevailed had an interference been declared, as it well could have, but does not prevail as a cancellation petitioner. This result is anomolous simply because an interference should be, and is, nothing more than concurrent oppositions or an opposition and cancellation proceeding consolidated into one action. See *Jim Dandy*, supra (Lane, J., concurring). It is on the basis of this equivalence that the Patent Office has sought to limit declarations of interferences and to substitute for them oppositions and cancellations. The test favored by Judge Almond as applied to the facts of this case where an application has been filed by the cancellation petitioner would undermine the well-founded Patent Office approach.

As I have indicated above, it may seem unfair to allow a party which has not been using the mark at or about the time of the filing of its petition to succeed in cancelling the registration of a party who is making successful commer-

cial use of the mark. However, when one considers that had the parties been engaged in a priority contest based on their copending applications, the so-called nonuser would have emerged with the registration without, as far as I can sense, any compromise of equity or justice, the sting of the result in this case is, for me at least, substantially assuaged.

I will add that equity and justice would be best served if both appellant and appellee could ultimately secure separate registrations for essentially the same mark but as applied to the particular capacitors each is actually selling. Judge Rich reaches the truth of the matter when he states:

> To say that the goods of the parties "are the same," as appellee asserted, is somewhat like saying that toothpicks and telephone poles are the same because they are both pieces of wood.

Although as a result of the decision of the majority of this court appellant's registration will presumably be canceled, I see nothing to bar appellant from filing an application for registration with a description of the goods to which the mark applies narrowed to comprehend only the small capacitors which it manufactures and sells. Likewise, assuming that appellee's application has been held in abeyance pending the outcome of this appeal and presumably will be issued in due course, appellant's description of its goods could be limited to the very large capacitors which it assembles and sells. It seems doubtful that there would be any likelihood of confusion given the actual dissimilarities between the goods. Such a solution would give the desirable result of each party enjoying the benefits of our trademark system without infringing or diminishing the rights of the other.

Regardless of what may happen in the future, I am convinced that for the present the decision of the board must be affirmed for the reasons I have set forth.

ALMOND, Judge, dissenting, with whom BALDWIN, J., joins.

With deference, I am unable to agree with the principal opinion in much of its reasoning, nor can I agree with the majority in its result. I would reverse the decision of the Trademark Trial and Appeal Board granting appellee's petition to cancel appellant's registration.

The majority is made up of Judge Rich's principal opinion and Judge Lane's concurring opinion. Each opinion sets forth somewhat different reasons for affirming. Judge Lane votes to affirm mainly on the theory that since an interference between the parties was possible, appellee should be permitted to petition for cancellation with the burden placed on appellant to show that appellee had abandoned its marks. The problem with that approach is that there is no evidence of record that appellee filed an application which could have gone into interference with appellant's. While appellee's petition for cancellation alleged that it owned a pending trademark application, no copy of that application was ever produced.

Therefore, the situation presented us is one where appellee has had some limited prior use of the marks MULTICAP and MULTI-CAP; that use has since ceased and there was no use at the time the petition for cancellation was filed; appellee's marks are unregistered; there is no evidence that appellee ever attempted to register the marks, and appellee has petitioned to cancel a mark which is registered and is being used. Under the law to date, it is clear that appellee could not succeed under such circumstances. Old Monk Olive Oil Co. v. Southwestern Coca-Cola Bottling Co., 28 CCPA 1091, 118 F.2d 1015 (1941). The board and two judges of this court would evidently abolish the long-established principle of *Old Monk* which in this case dictates dismissal of the petition for cancellation. I would not.

While, as stated in Judge Rich's principal opinion and the cited *Grove* opinion, the strict rule of *Old Monk* may no

longer be viable.[1] I think the underlying rationale in *Old Monk* is still sound. When the owner of an unregistered mark petitions for cancellation of a registered mark, I think it incumbent on him to prove that his mark was being used on or about the time of filing the petition for cancellation or show that its nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark. See Singer Mfg. Co. v. Brueggeman, 120 USPQ 325 (TTAB 1959). Otherwise the petitioner cannot be damaged as a matter of law by the existing registration.

The burden should not be on the owner of the existing registration (appellant here) to prove that the cancellation petitioner (appellee here) had abandoned its unused and unregistered marks, and I think the board and the majority are in error in placing the burden on appellant in this case. Appellee alleged in its petition for cancellation that it has "continuously used" its marks, as I think it must, and the burden should have been placed on appellee to show that it was in fact using the marks or show good cause for not using them. For reasons which will be discussed below, it is my opinion that appellee has failed to meet that burden here. It is questionable whether appellee has even met the burden placed on it by the majority, i. e., rebutting the prima facie case of abandonment which statutorily arises by reason of over two years' nonuse.

The principal opinion suggests that placing the burden on the cancellation petitioner to show use or excusable nonuse merely delays filing the petition until he has resumed use of the unregistered marks. Even if this were true, it is the only logical approach. As long as the owner of the unregistered marks is not using them and has no good reason for not doing so, I see no justification for allowing him to obtain cancellation of an existing registration, which presumably is being used, on the mere "hope" or "expectation" that use of the unregistered marks will be resumed. Mere hope of resuming use should not be a sufficient ground for cancellation. If it turns out to be more than a mere expectation, then perhaps cancellation can be achieved at that time, assuming that the five-year "statute of limitations," 15 U.S.C. § 1064(a), has not been exceeded. Until that expectation becomes a reality, however, there can be no damage as a matter of law upon which to base the cancellation petition.

In this case, I think that all appellee had was a mere hope that the use of the marks would be resumed. As the principal opinion notes, appellee had not used the marks for over two years even though it had apparently had at least one occasion to sell capacitors similar to the ones on which the marks had previously been used. Its expectation for resumed use of the marks was stated by appellee's president to be only an "anticipation" based on certain "proposals" which had been made but which had not come into fruition at the time the testimony was taken. In addition, there is no indication that the marks MULTI-CAP and MULTICAP were specifically tied to those proposals. I do not think this sufficient to satisfy the burden which should have been placed on appellee.

For the foregoing reasons, I feel appellee has not shown sufficient grounds for cancellation of appellant's registration. Accordingly, I would reverse the decision of the board.

I. It is noted, however, that despite the *Grove* decision the Trademark Trial and Appeal Board consistently followed *Old Monk* in a long line of cases and required opposers and cancellation petitioners to prove that the unregistered marks which they relied upon were being used. *See, e. g.*, Phillips Petroleum Co. v. C. J. Webb, Inc., 158 USPQ 662 (TTAB 1968); Yard-Man, Inc. v. Getz Exterminators, Inc., 157 USPQ 100 (TTAB 1968); Genesco Inc. v. Tru Balance Corsets, Inc., 152 USPQ 198 (TTAB 1966); Procter & Gamble Co. v. Cohen, 146 USPQ 137 (TTAB 1965); Kiekhaefer Corp. v. Outboard Marine Corp., 130 USPQ 422 (TTAB 1961); Michigan Chemical Corp. v. Remington Products Corp., 126 USPQ 200 (TTAB 1960).