**MILLER BREWING COMPANY, Appellant,**

v.

**OLAND'S BREWERIES [1971] LIMITED, Appellee.**

**Patent Appeal No. 76–627.**

United States Court of Customs and Patent Appeals.

Dec. 23, 1976.

Arthur L. Morsell, Jr., Milwaukee, Wis. (Wheeler, Morsell, House & Fuller, Milwaukee, Wis.), atty. of record, for appellant.

George H. Mitchell, Jr., Washington, D. C. (Fisher, Christen & Sabol, Washington, D. C.), atty. of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board[1] (TTAB) sustaining appellee's opposition No. 54,216, filed April 17, 1973, against appellant's application serial No. 417,309, filed March 3, 1972, for registration of the mark SCHOONER for beer. We affirm.

The critical issue is whether, for purposes of section 2(d) of the Lanham Act (15 U.S.C. § 1052(d)), opposer's mark SCHOONER for beer was abandoned.

### Background

Opposition is based on appellee's prior use of its mark. Oland & Son Limited, a Canadian brewer and appellee's predecessor in title, obtained United States Registration

1. 189 USPQ 481 (1975).

No. 724,304 on November 21, 1961, for the mark shown below for lager beer.

In 1965, Oland & Son began shipping beer from Canada in substantial quantity to the greater Boston area where it was sold in nonreturnable glass bottles, primarily in restaurants and other "on-premise trade." Increasing shipments continued until late in 1968, when they were discontinued due to both economic and business problems in Canada encountered by Oland & Son. Meanwhile, in January of 1968, Oland & Son's United States registration of its mark had been cancelled for failure to file a continued use affidavit as required by section 8(a) of the Lanham Act (15 U.S.C. § 1058(a)). In 1971, appellee's parent, Labatt Breweries of Canada, purchased some of the business assets (including the trademark SCHOONER) of Oland & Son, and appellee carried on the marketing of beer in Canada under the SCHOONER mark. The record does not disclose any sales of SCHOONER beer in the United States since late 1968 or early 1969, although the mark SCHOONER has been associated with advertising of appellee's beer in tourist

magazines distributed in the United States and on radio stations located in the United States.[2]

The TTAB found that such activities as attempting to have a Boston distributor seek label approval, offering to sell SCHOONER beer in standard Canadian size returnable bottles in the United States, and advertising in travel magazines and radio stations in the United States ruled out any intent to abandon the mark. Therefore, it held that although nonuse of the mark in commerce for a period of more than two years established a prima facie case of abandonment under section 45 of the Lanham Act (15 U.S.C. § 1127), such nonuse was excusable for valid business reasons.

Further, the TTAB found that although appellee's efforts in publicizing SCHOONER beer in the United States may not have been sufficient to establish technical trademark usage, they were sufficient to set up a situation (in the areas reached by the advertising) in which the public would associate the mark SCHOONER with appellee's beer. Accordingly, it also held that appellant-applicant's mark SCHOONER so resembles appellee-opposer's "previously used and not abandoned mark" as to be likely, when applied to appellant-applicant's goods, to cause confusion or mistake or to deceive.

## OPINION

This court has applied the section 45 (Lanham Act) presumption of abandonment from two consecutive years of nonuse to a party's unregistered common-law trademark. *American Lava Corp. v. Multronics, Inc.*, 59 CCPA 1127, 461 F.2d 836, 174 USPQ 107 (1972).[3] Therefore, we agree with the TTAB that a prima facie case of abandonment was established here.[4] However, long ago the Supreme Court said:

2. There was a shipment of SCHOONER beer through diplomatic channels to Chicago for a luncheon sponsored by the Nova Scotia government in 1973. Also, appellee's counsel stated during oral argument that SCHOONER beer is again being sold in the United States.

3. The TTAB has applied the presumption in a cancellation proceeding based on the petitioner's common-law mark. *Colgate-Palmolive Co. v. Sanford Chem. Co.*, 162 USPQ 424 (1969).

4. Although Oland & Son's registration was cancelled in January of 1968 for failure to file a continued use affidavit, this, in and of itself, does not show an intent to abandon. See *Mishawaka Rubber & Woolen Manufacturing Co. v. Bata Narodni Podnik*, 42 CCPA 872, 222 F.2d 279, 105 USPQ 432 (1955). Indeed, Oland & Son continued to sell SCHOONER beer in the United States for almost a year thereafter.

To establish the defence of abandonment it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon. Acts which unexplained would be sufficient to establish an abandonment may be answered by showing that there never was an intention to give up and relinquish the right claimed.

*Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 31, 21 S.Ct. 7, 11, 45 L.Ed. 60 (1900). Thus, abandonment does not result from a mere temporary withdrawal from the market forced by outside causes ("excusable nonuse"), and the prior user's rights in a mark previously used in the market will preclude registration by a later user if there is a likelihood of confusion under section 2(d) of the Lanham Act. See *American Lava Corp. v. Multronics, Inc., supra.*

Oland & Son discontinued shipments of SCHOONER beer to the United States in November of 1968 for several business and economic reasons. Modernization of equipment to meet increasing demand caused financial difficulties. The new equipment could not handle the special nonreturnable bottles which had been used in shipments to the United States.[5] A strike by employees of a competitor increased demand for SCHOONER beer in Canada. Some of these problems remained after appellee took over the business in 1971.

■ The evidence shows that even though shipments[6] of SCHOONER beer to the United States had been discontinued, appellee, during the winter of 1971–72 through December of 1973, actively promoted the mark SCHOONER for its beer through advertising in tourist magazines distributed in the United States and/or on radio stations heard by listeners in the United States.[7] The license to sell beer in Massachusetts was renewed in at least 1970 and 1971. On December 10, 1969, an offer was made to sell SCHOONER beer in the stubby Canadian bottles to a restaurant in Cambridge, Massachusetts, if label approval by the state could be worked out. At the same time, Oland & Son wrote a Boston beer distributor offering to supply SCHOONER beer in the stubby Canadian bottles if the State Liquor Administration would permit. One of appellee's officers testified that an objective of appellee after Oland & Son's business was taken over in 1971 was to make use of the expertise of the import division of appellee's parent corporation, Labatt Importers, in marketing SCHOONER beer in the United States. Such evidence, taken as a whole, rebuts the prima facie case of abandonment. See *Sterling Brewers, Inc. v. Schenley Industries, Inc.*, 58 CCPA 1172, 441 F.2d 675, 169 USPQ 590 (1971).

Appellant has argued that appellee must show an intent to resume sales in the United States to rebut the prima facie case of abandonment. We are satisfied that the evidence supports such an intent.

■ We note that appellant has not disputed the TTAB's holding of likelihood of confusion, which is well supported by the record.

In view of the foregoing, the decision of the TTAB sustaining the opposition is *affirmed.*

AFFIRMED.

5. Special labeling requirements in Massachusetts precluded use of the standard, compact, stubby bottle used by all Canadian brewers and necessitated use of a bottle with a longer neck.

6. We note that there is no requirement that an opposer show actual sales under his mark at the time of opposition to maintain such a proceeding. See *American Lava Corp., supra,* 59 CCPA at 1132, 461 F.2d at 840, 174 USPQ at 110.

7. This court has recognized that a party may rely upon advertising and promotional use of a term or expression to defeat a right of registration asserted by another who has made subsequent trademark use of that term or expression on the same or similar goods. *Jim Dandy Co. v. Martha White Foods, Inc.*, 59 CCPA 1016, 458 F.2d 1397, 173 USPQ 673 (1972).