THIS OPINION IS A PRECEDENT
OF
THE T.T.A.B.

Mailed:  March 16, 2009

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Benjamin J. Giersch
v.
Scripps Networks, Inc.

_____

Cancellation No. 92045576

_____

David A. Weinstein, Esq., for Benjamin Giersch.

Gerald J. Ferguson of Baker & Hostetler LLP, for Scripps
Networks, Inc.

_____

Before Quinn, Holtzman and Ritchie, Administrative Trademark
Judges.

Opinion by Ritchie, Administrative Trademark Judge:

Mr. Benjamin J. Giersch ("petitioner")[1] has petitioned

to cancel Registration No. 2943958 for the mark DESIGNED TO

SELL, owned by Scripps Network, Inc ("respondent").[2]  The

registration issued on April 26, 2005 on the Principal

Register.  The services are identified therein as

"entertainment services, namely, an on-going audio and

---

[1] Gerald J. Giersch was initially listed as a co-petitioner on
the petition for cancellation, but was later removed by the Board
for failure to pay the additional fee for a second petitioner.
[2] Application Serial No. 78402459, which matured into the
registration at issue, was filed on April 15, 2004, claiming
first use and first use in commerce of January 1, 2004.

visual program distributed over television, satellite, wireless, audio and video media, fiber optics, cable, and a global computer network in the fields of gardening and landscaping, furniture, antiques and collectibles; interior design and decorating; architecture and home design, building, improvement, repair and renovation; and similar subjects in the fields of homes and gardens," in International Class 41.

In his petition for cancellation, petitioner asserts that since prior to respondent's first use of its mark, petitioner has continuously used in commerce the mark DESIGNED2SELL in connection with the services listed in his pending trademark application for: "providing the services of staging managers and or renters who are placed in residences for the sole purpose of maintaning [sic] them through the sales cycle in order to improve the residence's selling potential" in International Class 36; "interior decorating service in the nature of providing furniture, window treatments, wall treatments, art and decorative accessories in order to improve a house's selling potential," in International Class 42; and "landscape maintenance and imporvments [sic] in order to improve a homes [sic] selling potential" in International Class 44.[3]

---

[3] Application Serial No. 78426238 was filed on May 27, 2004, by Benjamin J. Giersch and Gerald J. Giersch as co-applicants

Petitioner asserts in addition that his application has been refused registration by the Trademark Examining Operation under Section 2(d) of the Trademark Act on the basis of a likelihood of confusion with the mark in respondent's Registration No 2943958.

Petitioner alleges that by virtue of his prior use of the mark DESIGNED2SELL, he has built up valuable goodwill therein which would be jeopardized by the continued registration of respondent's "confusingly similar" DESIGNED TO SELL mark. Respondent's answer denied the salient allegations of the petition, and asserted the affirmative defenses of laches and acquiescence.[4] Both parties filed trial briefs,[5] and petitioner filed a reply brief.

### The Record and Pending Motion to Strike

The record in this case includes the pleadings and the file of the involved registration. In addition, during its assigned testimony period, respondent submitted the testimony deposition, with accompanying exhibits, of Michael Eric Dingley, Senior Vice President, Programming and Content

---

alleging first use and first use in commerce of the identified services in all classes on December 1, 2001.

[4] Respondent did not maintain its affirmative defenses in its trial brief. Accordingly, we consider the defenses to have been waived, and we give them no further consideration.

[5] Without explanation, petitioner filed an amended trial brief the day after filing his original trial brief. Respondent did not object. So, we have considered the amended brief in this decision. Petitioner filed exhibits with his main and reply briefs. We consider these only to the extent the exhibits were otherwise properly made of record.

Strategy, of HGTV, a subsidiary of respondent that airs the show, "Designed to Sell." Additionally, the parties stipulated into the record that "the discovery depositions of Benjamin J. Giersch and Gerald David Giersch taken by the Registrant on September 18, 2007, may be used as trial testimony and offered in evidence by Petitioner."

When petitioner filed the discovery depositions pursuant to the stipulation, respondent countered with a motion to strike "approximately 460 pages of documents" that constitute "noncomplying evidence" that was "not stipulated" and "not introduced" properly by the witnesses (these correspond to the exhibits marked 35 and higher). Although the stipulation did not specifically address its applicability to exhibits, it is understood that the parties intended it to include such exhibits as were properly identified and introduced during the depositions. Indeed, respondent's motion to strike does not purport to exclude all deposition exhibits from the record, but only those that were "not introduced in connection with any testimony." In response to the motion to strike, petitioner set forth a chart purporting to state where each of the contested exhibits was identified by one of the two witnesses.

Trademark Rule 2.123(g)(2) provides that "[e]ntry and consideration may be refused to improperly marked exhibits." The Board will consider an objection as to improper

authentication, but of course our ruling depends on the facts of the case. *Pass & Seymour, Inc. v. Syrelec,* 224 USPQ 845, 847 (TTAB 1984) (allowing admission of documents that were presented to, and identified by, witness at deposition). Here, we find upon review of the contested exhibits that the deponents did indeed refer to the documents during the depositions, as asserted by petitioner. However, as respondent asserts, the documents were not physically present during the depositions, and therefore were not specifically identified and authenticated. That petitioner produced the documents in response to respondent's document production requests during discovery does not automatically make the documents of record. *See* Trademark Rule 2.122(e), 37 CFR §2.122(e), (providing for the filing of printed publications and official records through a notice of reliance) and 2.123(h), 37 CFR §2.123(h) (providing for the filing of all trial deposition transcripts, with proper indexing and exhibits). Accordingly, we grant respondent's motion, and strike from the record the exhibits to the Giersch depositions that are numbered 35 and higher.[6]

---

[6] Although we have struck these exhibits from the record, we hasten to add that their inclusion would not change the outcome of this cancellation proceeding since the relevant information contained therein was mentioned elsewhere in the record.

**Petitioner's Standing and Priority of Use**

Petitioner has established his common-law rights in the mark DESIGNED2SELL, and has thereby established his standing to bring this proceeding.  In reaching this conclusion, we do not rely on petitioner's application for registration because petitioner did not properly introduce his pending application, nor did petitioner introduce, by testimony or documentation, evidence that the application was refused and suspended pending the outcome of this cancellation proceeding.

To establish priority on a likelihood of confusion claim brought under Trademark Act §2(d), a party must prove that, vis-à-vis the other party, it owns "a mark or trade name previously used in the United States … and not abandoned…."  Trademark Act Section 2, 15 U.S.C. §1052.  A party may establish its own prior proprietary rights in a mark through ownership of a prior registration, actual use or through use analogous to trademark use, such as use in advertising brochures, trade publications, catalogues, newspaper advertisements and Internet websites which create a public awareness of the designation as a trademark identifying the party as a source.  *See* Trademark Act §§2(d) and 45, 15 U.S.C. §§1052(d) and 1127.  *See also T.A.B. Systems v. PacTel Teletrac*, 77 F.3d 1372, 37 USPQ2d 1879

(Fed. Cir. 1996), vacating *Pactel Teletrac v. T.A.B. Systems*, 32 USPQ2d 1668 (TTAB 1994).

It is well settled that in the absence of any evidence of earlier use, the earliest date upon which respondent may rely is the filing date of its underlying application. *See* Trademark Act Section 7(c), 15 U.S.C. §1057(c). *See also Larami Corp. v. Talk to Me Programs, Inc.,* 36 USPQ2d 1840 (TTAB 1995). In this case, and as noted above, the application that matured into the registration at issue herein was accorded a filing date of April 15, 2004. Respondent introduced testimonial and documentary evidence that its actual first date of use in commerce of the DESIGNED TO SELL mark in connection with its identified services was January 1, 2004. (Dingley depo. at 11:20-21, and Ex. 4). This date comports with the one alleged in the underlying application, and is the earliest date upon which respondent is entitled to rely for purposes of priority.

Inasmuch as petitioner has not pleaded ownership of any registered trademark, petitioner must rely on his common-law use of DESIGNED2SELL as a trademark to prove priority.[7] In order for a plaintiff to prevail on a claim of likelihood of confusion based on its ownership of common-law rights in a mark, the mark must be distinctive, inherently or otherwise,

---

[7] We also note that petitioner's pleaded application, even if made of record, was filed subsequent to the filing date of the application that matured into respondent's registration.

7

and plaintiff must show priority of use. *See Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40 (CCPA 1981). Respondent has not raised an issue as to the distinctiveness of petitioner's mark or otherwise put petitioner on notice of this defense, and therefore we find that the mark is distinctive. *See Wet Seal Inc. v. FD Management Inc.*, 82 USPQ2d 1629, 1634 (TTAB 2007) (absent argument or evidence from applicant, opposer's mark deemed distinctive); *The Chicago Corp. v. North American Chicago Corp.*, 20 USPQ2d 1715, note 5 (TTAB 1991) (affirmative defense regarding descriptiveness of opposer's mark, raised for the first time in applicant's brief, was untimely and not considered by the Board).

In order to establish priority, petitioner must show that he made common-law use of his DESIGNED2SELL mark in connection with his alleged services prior to January 1, 2004. In a case involving common-law rights, "the decision as to priority is made in accordance with the preponderance of the evidence." *Hydro-Dynamics Inc. v. George Putnam & Company Inc.,* 811 F.2d 1470, 1 USPQ2d 1772, 1773 (Fed. Cir. 1987). In support of his claim of priority, petitioner testified that he has been doing business under the name DESIGNED2SELL since as early as the spring of 2002. (B. Giersch depo. at 49:14). Petitioner's tax filings back up this claim (B. Giersch depo. Ex. 29), as does his filing of

a Colorado Business Registration with the State of Colorado in 2001 (B. Giersch depo. Ex. 20). On his Colorado Business Registration for DESIGNED2SELL, petitioner listed the following: "Provide management of properties that are for sell [sic] to the owner of the property when the property is a vacant home. We provide furnishing to help sell the home as well as monitor the property to maintain security." (B. Giersch depo. Ex. 20). Petitioner's testimony and exhibits, as well as those of his brother, corroborate the evidence that at least since spring of 2002, petitioner has used the mark DESIGNED2SELL in connection with "providing the services of staging managers and/or renters who are placed in residences for the sole purpose of maintaining them through the sales cycle in order to improve the residence's selling potential." (G. Giersch depo. at 39:19-43:17 and 46:14; B. Giersch depo. at 33:1-2, 96:17-18, 101:13-25; and Exs. 4,5,6,8,9,10,11,21,23,24).

We note that in describing the nature of the common-law services that petitioner has established via the record, we are not bound by petitioner's identification of services in his pending application Serial No. 78426238. Nevertheless, this description coincides with petitioner's identification in the application for services in International Class 36. Both petitioner and his brother testified that they have also done some occasional decorating, in the nature of

indoor and outdoor improvements, in the homes where they have placed tenants. (See G. Giersch depo. at 78:23-79:1; B. Giersch depo. at 52:8-11, 99:14-17, and Ex. 28). However, there is no evidence that this ever constituted a regular or recurring activity such as to create common-law rights in the DESIGNED2SELL mark for those services. (*See* G. Giersch depo. at 114:21-24). On the contrary, petitioner estimated that "managed staging services" comprised probably "95 percent" of his reported income for 2001-2002. (B. Giersch depo. at 105:14-17; Ex. 29), and 90% for 2002-2003 (*Id.* at 111:3-11; Ex. 30). Without evidence to show that they were ever performed as a regular or recurring activity associated with the mark, we decline to find that petitioner has established common-law rights in the DESIGNED2SELL mark for indoor or outdoor services related to decorating or home improvement.

Respondent has argued in its trial brief that petitioner has abandoned any common-law rights that petitioner may have had in the mark DESIGNED2SELL, first by discontinuing use, and second by selling his business. Respondent did not raise the defense of abandonment in its answer. However, petitioner did not object on that ground in his reply brief, and instead addressed the merits of the defense. The Board has discretion to deem the pleadings

amended to conform to the evidence in accordance with Federal Rule of Civil Procedure, Rule 15(b).

Accordingly, we consider the issue of whether petitioner at some point abandoned the common-law rights that he had established in DESIGNED2SELL, either passively by discontinuing his business in Colorado in the 2004 to 2007 time frame, or affirmatively by contracting to sell that business. The statutory presumption of abandonment after three years non-use does apply to marks established via common-law usage. 15 USC §1127; *see also Miller Brewing Co. v. Oland's Breweries Ltd.*, 548 F.2d 349, 192 USPQ 266, 267 (CCPA 1976); *Lesley Hornby a/k/a Lesley Lawson a/k/a Twiggy v. TJX Companies, Inc.*, 87 USPQ2d 1411 (TTAB 2008); and *L. & J.G. Stickley Inc. v. Cosser*, 81 USPQ2d 1956, 1967 (TTAB 2007). However, to fall under the statutory presumption, the use must have been discontinued "with intent not to resume such use." 15 USC §1127. Intent not to resume use may be inferred from the circumstances, and "use" of a mark means "the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." *Id.* Regarding intent, the predecessor court to the Court of Appeals for the Federal Circuit, our primary reviewing court, quoted the Supreme Court in saying: "To establish the defense of abandonment, it is necessary to show not only acts indicating a practical

abandonment, but an actual intent to abandon. Acts which unexplained would be sufficient to establish an abandonment may be answered by showing that there never was an intention to give up and relinquish the right claimed." *Miller Brewing Co. v. Oland's Breweries Ltd.*, 192 USPQ at 267, *citing Saxlehner v. Eisner & Mendelsohn Co.*, 179 U.S. 19, 31 (1900).

Here we do not have the three-year period of non-use to create a presumption of abandonment. Thus, the burden of establishing an intent to abandon the mark falls on respondent. *See Online Careline Inc. v. America Online Inc.,* 229 F.3d 1080, 56 USPQ2d 1471 (Fed. Cir. 2000). Respondent has not met this burden. Petitioner has testified that to the extent he has briefly stopped use of the mark in Colorado, he intended, and continues to intend, to resume such use. (B. Giersch depo. at 90:11-21). Meanwhile, his brother has continuously used the mark to run a parallel business in Dallas, Texas since before the time of alleged abandonment. (G. Giersch depo. at 19:20). It is clear that Mr. Gerald Giersch's use has been undertaken by permission from petitioner and is controlled by petitioner. *Basic, Inc. v. Rex*, 167 USPQ 696 (trademark license may be oral); *see also* McCarthy on Trademarks and Unfair Competition §18:43 and § 18:54 (4th ed. 2008), citing the Trademark Manual of Examination Procedure 1201.03(b)(common-

12

law rights may be licensed, and federal registration may even be based on such license). In this regard, Mr. Gerald Giersch has testified as to the enormous extent of petitioner's involvement with his Dallas, Texas business, whereby petitioner has shared his contracts and advertisements, and has overall controlled the nature and quality of his brother's corresponding DESIGNED2SELL services. (G. Giersch depo. at 39:19-21, 69:11, 93:13, and 113:10-12). Since we find Mr. Gerald Giersch's use to be permissive and controlled, we do not need to examine whether such use constitutes a "related company" under 15 USC § 1055. In either case, we find that petitioner has not passively abandoned his common-law rights via nonuse.

As to the sale of petitioner's business, it is apparent from the Agreement to Sell Business, that while petitioner sold his Colorado business in 2004, petitioner intended to maintain use of the DESIGNED2SELL mark for himself and his licensees. (B. Giersch, Ex. 25). The agreement stipulates that "Seller is the owner of that trade name [DESIGNED2SELL]." *Id., Para. 6.* The agreement further includes general quality-control provisions, consistent with a valid licensing agreement. *Id.* Accordingly, we find that petitioner has not affirmatively abandoned his common-law rights via sale of his business.

13

Accordingly, we accept petitioner's claim of common-law rights to the mark DESIGNED2SELL for "providing the services of staging managers and/or renters who are placed in residences for the sole purpose of maintaining them through the sales cycle in order to improve the residence's selling potential," with a date of first use as of spring 2002, which establishes priority over respondent's earliest date of January 1, 2004. We turn then to the merits of petitioner's claim of likelihood of confusion.

## Likelihood of Confusion

Our determination under Section 2(d) is based on an analysis of all of the facts in evidence that are relevant to a likelihood of confusion. *See In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005); *In re Majestic Distilling Company, Inc.,* 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003); and *In re Dixie Restaurants Inc.*, 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

While all the *DuPont* factors must be considered when they are of record, the various factors "may play more or less weighty roles in any particular determination." *In re E.I. du Pont*, 177 USPQ at 567. "Indeed, any one of the factors may control a particular case." *In re Dixie*

14

*Restaurants Inc.*, 41 USPQ2d at 1533 citing *du Pont,* 177 USPQ at 567.

The Marks

We start by examining the first *du Pont* factor, i.e., whether respondent's and petitioner's marks are similar or dissimilar when viewed in their entireties in terms of appearance, sound, connotation and overall commercial impression. *See Palm Bay Imports, Inc. v. Veuve Clicquot, supra.* The test, under the first *du Pont* factor, is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the goods and/or services offered under the respective marks is likely to result.

Petitioner's mark DESIGNED2SELL is phonetically identical to respondent's mark DESIGNED TO SELL. The marks are also highly similar visually, with the sole differences being the substitution in respondent's mark of the short preposition "to" for the number "2" between the two dominant words, and the use of spaces between them. *See In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985) ("[T]here is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on

15

consideration of the marks in their entireties.  Indeed this type of analysis appears to be unavoidable.").  There is no apparent difference in connotation created by the substitution of the "to" for "2."  Likewise, the spaces that respondent places between the words do not create a distinct commercial impression from petitioner's presentation of his mark as one word.  *See Stock Pot, Inc. v. Stockpot Restaurant, Inc.*, 220 USPQ 52, 54 (TTAB 1983), *aff'd* 737 F.2d 1576, 222 USPQ 665 (Fed. Cir. 1984) ("There is no question that the marks of the parties [STOCKPOT AND STOCK POT] are confusingly similar.  The word marks are phonetically identical and visually almost identical.")

Respondent has argued that it uses its DESIGNED TO SELL mark together with HGTV, its "house mark."  (Respondent's brief at 3).  This is not borne out by the evidence however. (*see* Dingley depo., Exs. 4 and 5).  Furthermore, the mark is registered independently, and use with a "house mark" would not necessarily make it less confusing.  *See In re Christian Dior, S.A.,* 225 USPQ 533, 534 (TTAB 1985) (applicant's LA CACHET DIOR held confusingly similar to CACHET); *In re the United States Shoe Corp.,* 229 USPQ 707, 709 (TTAB 1985) (CAREER IMAGE for retail women's clothing store services likely to cause confusion with CREST CAREER IMAGE for clothing).

16

In view of the foregoing, we find that the marks are similar in terms of appearance, sound, connotation and commercial impressions, all of which weighs in favor of finding a likelihood of confusion.

### Relative Strength and/or Weakness

Next, we consider the relative strength and/or weakness of petitioner's mark. Petitioner's DESIGNED2SELL mark is highly suggestive of his service of providing "staging managers and/or renters," with the specific objective of helping "to improve the residence's selling potential." Likewise, respondent's DESIGNED TO SELL mark is highly suggestive of its programs covering "home design" and related topics. As respondent's witness described it, "Our goal is to increase the desirability of their home. . . and if all goes well, in return they will receive a higher value on their home in the selling market." (Dingley depo. at 9:13-20). Although the marks convey the same idea, petitioner's highly suggestive mark is "weak" and entitled to only a limited scope of protection. *See The Drackett Company v. H. Kohnstamm & Co., Inc.,* 404 F.2d 1399, 160 USPQ 407, 408 (CCPA 1969) ("The scope of protection afforded such highly suggestive marks is necessarily narrow.") The highly suggestive nature of petitioner's mark weighs against finding a likelihood of confusion.

The Services

With respect to the services, it is well-established that the goods or services of the parties need not be similar or competitive, or even offered through the same channels of trade, to support a holding of likelihood of confusion.  It is sufficient that the respective goods or services of the parties are related in some manner, and/or that the conditions and activities surrounding the marketing of the goods or services are such that they would or could be encountered by the same persons under circumstances that could, because of the similarity of the marks, give rise to the mistaken belief that they originate from the same source.  *See Hilson Research, Inc. v. Society for Human Resource Management*, 27 USPQ2d 1423 (TTAB 1993); and *In re International Telephone & Telegraph Corp*., 197 USPQ 910, 911 (TTAB 1978).  The issue, of course, is not whether purchasers would confuse the goods or services, but rather whether there is a likelihood of confusion as to the source thereof.

As identified in its registration, respondent's services are "entertainment services, namely, an on-going audio and visual program distributed over television, satellite, wireless, audio and video media, fiber optics, cable, and a global computer network in the fields of gardening and landscaping, furniture, antiques and

18

collectibles; interior design and decorating; architecture and home design, building, improvement, repair and renovation; and similar subjects in the fields of homes and gardens."  We have accepted petitioner's priority from common-law usage in connection with "providing the services of staging managers and/or renters who are placed in residences for the sole purpose of maintaining them through the sales cycle in order to improve the residence's selling potential."

Petitioner has submitted no third-party registrations, Internet advertisements, or other evidence to show that his services of providing "staging managers and/or renters" are in any way related to the "entertainment services" of respondent.  Petitioner has testified that his services are intended to "help sell the home." (G. Giersch depo. at 58:22-24; *See also* B. Giersch depo. at 99:14-17, and Ex. 28., advertising "services designed to help you sell"). While respondent's television series also features individuals who hope to sell their homes (*see* Dingley depo. at 9:13-22), respondent's mark is registered for "entertainment services," not for providing "staging managers and/or renters." (*See also* Dingley depo. at 29:21-23).  Specifically, as discussed in this decision under "Petitioner's Standing and Priority of Use," we have declined to extend petitioner's common-law rights on his

19

DESIGNED2SELL mark to the decorating and home improvement services that he pleaded in his petition to cancel. Instead, we find that petitioner has not established that he has offered decorating and home improvement services as a regular or recurring activity such as to create common-law rights in the DESIGNED2SELL mark for those services. (*see* G. Giersch depo. at 114:21-24; B. Giersch depo. at 105: 14-17 and 111:3-11). Meanwhile, petitioner has not shown that the service for which we do find petitioner has established common-law rights, that of providing "staging managers and/or renters . . . for the sole purpose of maintaining them through the sales cycle" is sufficiently related to respondent's identified service as to "give rise to the mistaken belief that they originate from the same source," particularly when we take into consideration the relative weakness of petitioner's mark.

Accordingly, despite the high similarity between the marks, we find this second *du Pont* factor weighs strongly in favor of finding no likelihood of confusion between respondent's identified services and the services protected by petitioner's common-law rights.

### Channels of Trade/Classes of Consumers

It is apparent that petitioner's two main consumer targets are real estate brokers who will locate houses for petitioner to "stage" and "staging managers" who will reside

therein. (G. Giersch depo. at 39:19-43:17 and 46:14; B. Giersch depo. at 33:1-2, 96:17-18, 101:13-25; and Exs. 4,5,6,8,9,10,11,21,23,24). Accordingly, petitioner advertises via letters to real estate brokers on the one hand, and classified advertisements seeking staging managers on the other. *Id.* Respondent considers its clients to be those who provide it with direct revenue, *i.e.,* "our clients are, first and foremost, our ad sales clients and then, secondary, it would be the cable operators or cable system operators." (Dingley depo. at 31:16-19).

Of course, it may be said that both petitioner and respondent ultimately appeal to an overlapping audience of the general public, since petitioner seeks contracts with homeowners to stage homes under his DESIGNED2SELL mark and respondent seeks to interest television (or related media) viewers into watching its DESIGNED TO SELL show. To the extent the purchasers may overlap, we find this third *du Pont* factor to weigh slightly in favor of petitioner.

<u>Conditions of Sale</u>

The next *du Pont* factor discussed by the parties regards the conditions of sale. Respondent asserts that the "ad sales clients" and "cable systems operators" who purchase its DESIGNED TO SELL services are "very sophisticated," adding "some ivy league." (Dingley depo. at 34:1-12). However, respondent has introduced no evidence as

to the actual sophistication of its clients, and indeed respondent's witness noted that he is "the programming guy," not the sales manager. *Id.* In any event, it is well-established that sophisticated purchasers are not necessarily knowledgeable in the field of trademarks or immune from source confusion. *See In re Decombe*, 9 USPQ2d 1812, 1814-1815 (TTAB 1988).

Moreover, the applicable standard of care is that of the least sophisticated consumer. *Alfacell Corp. v. Anticancer, Inc.*, 71 USPQ2d 1301, 1306 (TTAB 2004). As noted above, both petitioner and respondent market to some extent to the general public – petitioner to homeowners and respondent to television (or related media) viewers. Taking into consideration that the marks are nearly identical, but that the services are dissimilar and unrelated, we find this fourth *du Pont* factor to be neutral.

### Actual Confusion

The final d*u Pont* factor discussed by the parties is the lack of verifiable instances of actual confusion. Although respondent asserts that the absence of actual confusion suggests no likelihood of confusion, it is not necessary to show actual confusion in order to establish likelihood of confusion. *See Weiss Associates Inc. v. HRL Associates Inc.* 902 F.2d 1546, 223 USPQ 1025 (Fed. Cir. 1990). Thus, while evidence of actual confusion, if it

22

exists, would strongly support a finding of likelihood of confusion, the absence thereof does not necessarily overcome a finding of likelihood of confusion. Furthermore, respondent has only offered its services under the DESIGNED TO SELL mark for a few years. Accordingly, we find this eighth *du Pont* factor also to be neutral.

## Conclusion

We have carefully considered all of the testimony and evidence pertaining to priority of use and the relevant *du Pont* factors, as well as all of the parties' arguments with respect thereto. We conclude that petitioner has established priority of use of a nearly identical mark. We have also found petitioner's mark to be highly-suggestive and weak however. Furthermore, we find the services at issue to be dissimilar and unrelated. In particular, we have declined to extend petitioner's common-law protection to the decorating and home improvement services for which he seeks protection via his petition for cancellation, finding that petitioner has not established that this ever constituted a regular or recurring activity such as to create common-law rights in the DESIGNED2SELL mark for those services. Petitioner has not submitted documentary or testimonial evidence to show the similarity of his services to that of respondent such that consumers would be likely to mistakenly believe that they originate from the same source.

23

Accordingly, because the services are different and unrelated, and petitioner's mark is weak and entitled to a limited scope of protection, on balance, we find no likelihood of confusion between petitioner's DESIGNED2SELL common-law rights for "providing the services of staging managers and/or renters who are placed in residences for the sole purpose of maintaining them through the sales cycle in order to improve the residence's selling potential," and respondent's registered DESIGNED TO SELL mark for "entertainment services, namely, an on-going audio and visual program distributed over television, satellite, wireless, audio and video media, fiber optics, cable, and a global computer network in the fields of gardening and landscaping, furniture, antiques and collectibles; interior design and decorating; architecture and home design, building, improvement, repair and renovation; and similar subjects in the fields of homes and gardens."

DECISION:  The petition to cancel is denied.